NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 943-4761
TeleFax: (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

May 17, 2017

**UPLOADED TO E-COURTS**
Morton and Barbara Schneider, Pro Se
New Jersey 07102

Kenneth Fitzsimmons, Esq.
Toms River Township Division of Law
33 Washington Street
Toms River, New Jersey 08753

Re:     Schneider <u>et al.</u> v. Township of Toms River
        Block 173, Lot 15
        <u>Docket No. 009434-2016</u>

Dear Plaintiffs and Counsel:

This letter constitutes the court's decision following a hearing in the above captioned complaint. Plaintiffs are owners of the above referenced property ("Subject"). They timely appealed a judgment of the Ocean County Board of Taxation ("County Board") to this court. That judgment affirmed the regular assessment on the Subject, and used Code 10 as the basis, which stands for "denial of farmland assessment."

The facts are as follows. The Subject is a rectangular area comprising a total of 7.17 acres. On about one acre, the land is improved by a home and garage. The homestead adjoins the street. The garage is in the backyard. The area behind the garage measures about 6.17 acres. Immediately

*

to the rear of the garage is the "grazing/training field." The land adjacent to this area is divided into paddocks, a round pen, and an arena. Beyond this is an open area of grass/vegetation. Beyond that is the area where a nine-stall stable and a hay room are located. The photographs show land covered with trees as well as grassy areas, with pictures of horses grazing therein. The entire 6.17 acres is used to board, train and feed plaintiffs,' and other owners' horses.

Mr. Schneider testified that the area containing the paddocks and arena are simply open areas with fenced perimeters, so that the horses can freely move about yet maintain space from other horses, and the paddocked areas are used to graze, walk, and/or train horses. He stated that regardless of the fences, the entire area, except where the stables and hay room is located, has grass and is used by the horses for grazing. There is a sign on the Subject issued by the New Jersey Horse Council warning the public that an "equestrian area operator" is not responsible for injury or death due to equine animal activities.

In one corner of the rear of the Subject is a collection of manure. Mr. Schneider testified that local area excavators dump dirt therein, which he then mixes with the horse manure and grass clippings, and sells it back to developers as "topsoil." He did not provide the sale prices but claimed it was cheap since the developers save the cost of transporting the dirt to designated dumping sites.

As of the date of the 2016 farmland application (July 2015), plaintiffs had three horses, all of which they owned. Subsequently they boarded one more horse, which they did not own. Mr. Schneider, a retired show jumper, testified that he trains horses and gives riding lessons, however, as a family owned operation, he can manage only up to four horses. Thus, in a year, on average he would board and/or train only up to four horses. All horses are rough-boarded (i.e., left out to graze in the open until dusk, and stabled at night). Horses owned by others are boarded for short

2

periods, depending on the owner's desire ranging from overnight to three months (and includes feeding). Plaintiffs charge $500 a month for boarding. There are no formal agreements for boarding. Clientele are primarily friends and family.

Since at least 1998, the Subject has been farmland assessed. It also qualified for such assessment in 2015.

In July 2015, plaintiffs filed a farmland assessment application for the Subject for tax year 2016. Included with the application was a hand-drawn sketch of the area, with smaller squares within depicting the location of the homestead, garage, paddocks, pen, stables and the hay room, and the grassy areas in-between; the equine data form; and the "gross sales" form. The application indicated that 6+ acres was land actively devoted to permanent pasture, there were three horses/ponies, and that "topsoil" was the woodland product. The gross sales form showed $12,500 as income from pastureland. The Equine Data form reported 6+ acres as being used for equine related purposes, which included pasture, training and "topsoil." Facilities used included "arena, paddocks and stable." Zero horses were raised or sold.

After a personal inspection, the deputy assessor issued a letter denying farmland assessment for 2016. Although N.J.S.A. 54:4-23.13b requires the assessor to mail a notice of disallowance of farmland assessment on or before November 1 of the pretax year, the Township's letter was dated December 6, 2015. The reasons for the denial were two-fold: (1) land was not actively devoted to agricultural or horticultural use; and, (2) there was "insufficient information regarding . . . equine activity." The denial notice required plaintiffs to fill out and return an attached form in this regard, however, no such form was attached.

On January 29, 2016, the Township sent two notices of assessment for the Subject. One assessed land only as farmland in an amount of $5,600. The other notice included land and

improvements, assessed at $304,100. The 2016 tax list for the Township also reflects that the Subject was farmland assessed as to 6.17 acres, and regularly assessed at $304,100 as to a one-acre portion (containing the homestead). This tax list was never revised.

On February 8, 2016, plaintiffs filed a petition to the County Board challenging the denial of farmland assessment classification as to the 6.17 acres of the Subject. They did not appeal the valuation of their homestead (i.e., the $304,100 assessment). The Township did not file any petition or cross-petition.

On June 9, 2016, the County Board held a hearing. Apparently, the Township did not introduce any evidence as to why the Subject did not merit farmland assessment. It allegedly had agreed that the Subject had a "horse farm," yet argued that farmland assessment should be denied because the application had stated topsoil as a product from woodlands, when in fact, there was no proof in this regard.

On July 13, 2016, the County Board issued a judgment affirming the original assessment of $304,100. It used Judgment code 10, which is "denial of farmland assessment."

Plaintiffs appealed the County Board's judgment to this court claiming that farmland assessment was erroneously denied. They did not challenge the valuation aspect of the assessment upon their homestead. The Township did not file a separate appeal or counterclaim.

The deputy assessor who denied the farmland assessment has since retired. She did not appear at the trial. The assessor who attended the trial testified that from the deputy assessor's notes on file, the reason for her denial was that the law granted farmland assessment for boarding and training activities only if it was on land, which was contiguous to land that independently qualified for farmland assessment. Her notes also allegedly indicated that she had spoken to a farmhand who reported that the only activity on the Subject was plaintiff (Mr. Schneider) riding

4

his horses. Upon the court's questioning that grazing would, under law, qualify as an agricultural activity for farmland assessment, the assessor maintained that the denial was still proper because the area marked on plaintiff's sketch of the Subject as devoted to "grazing" was less than the threshold five acres, and could not include the paddocked area. Upon the court's further questioning, the Township conceded that tax on the 6.17 acres of the Subject is being collected based upon its $5,600 farmland qualified assessment.[1]

**FINDINGS**

Before considering the qualifications for farmland assessment, the court must consider whether it even has a justiciable controversy. "For a question to be justiciable, there must be an actual dispute between parties who have a sufficient stake in the outcome." Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 208 (App. Div. 2009) (citation and internal quotation marks omitted). Without a "genuine controversy between the parties," the courts will not issue "advisory opinions." Ibid.; see also O'Shea v. New Jersey Schools Const. Corp., 388 N.J. Super. 312, 317 (App. Div. 2006) (a justiciable controversy involves "a real controversy, as opposed to one that is hypothetical or abstract") (citations and internal quotation marks omitted). In this connection, "[o]nly a party aggrieved by a judgment may appeal therefrom . . . . [T]o be aggrieved a party must have a personal or pecuniary interest or property right adversely affected by the judgment in question." Howard Sav. Institution v. Peep, 34 N.J. 494, 499 (1961) (internal citations omitted).

Here, the Township first denied farmland assessment for the Subject (6.17 acres for lack of qualifying agricultural activity, and the other one-acre automatically since it was the homestead). However, almost two months later, the Township issued a notice of assessment

---

[1] The Township noted that for tax year 2017, the tax list shows only one assessment for the entire Subject (at $365,800) and that "the entire parcel is being treated as residential, with no farmland assessment."

5

deeming the 6.17-acre portion as qualified for farmland assessment. It also issued another notice of assessment at the same time deeming only one acre to be regularly assessed, which was the portion of the Subject occupied by the homestead. It is undisputed that plaintiffs are paying taxes on the 6.17-acre portion of the Subject based on the $5,600 farmland qualified assessment amount. This is what plaintiffs sought initially when they applied for farmland assessment. Therefore, plaintiffs' pecuniary or other interests are not adversely affected by the original assessment of $5,600 or by the County Board's judgment. Although the County Board judgment recited code 10 (denial of farmland assessment) as the reason for the judgment, it was denying something that was already reinstated by the Township, viz., farmland assessment for the 6.17-acre portion of the Subject, with no formal counterclaim or cross-petition filed by the Township challenging its reinstatement.

Could the January 2016 notice of assessment as to the 6.17-acre portion of the Subject be deemed to have superseded, thus, revoked the December 2015 denial of farmland assessment to that 6.17-acres? Here, and under the facts peculiar to this case, it would so appear. This is because first, the Township's 2016 tax list also reflected the 6.17 acres of the Subject as qualified farmland (as did the 2015 tax list), and that list was never revised. See N.J.S.A. 54:4-46 (after the assessor files the tax list with the county board of taxation, the "board shall meet for the purpose of examining, revising and correcting the tax lists and duplicates").[2] Second, the Township is collecting tax on the 6.17 acres based on the $5,600 farmland assessment. Third, neither plaintiffs

---

[2] The tax list must contain the same "factual details" as for any "other taxable property in the taxing district." N.J.S.A. 54:4-23.19; see also N.J.A.C. 18:15-5.3 (same); N.J.S.A. 54:4-24 (assessor should make a tabular list of owner names, "description and area of each parcel sufficient to ascertain its location and extent and the taxable value of each parcel as determined by him."). Further, if "a portion of a parcel of land is" farmland assessed, and "another portion of said parcel" is regularly assessed, then "each portion is to be shown on the tax list and duplicate on a separate line." N.J.A.C. 18:15-5.3(b).

nor the Township challenged the correctness of its January 29, 2016 notice of assessment imposing farmland assessment on the 6.17-acre portion of the Subject either at the County Board or before this court. Thus, for all intents and purposes, the later notice of assessment deeming the 6.17-acre portion of the Subject should prevail over the December 2015 notice of disallowance.

Does the County Board's judgment post-hearing the issue of farmland assessment qualification effectively act as a repudiation of the Township's January 29, 2016 notice of assessment imposing farmland assessment on the 6.17-acre portion of the Subject? "Any appeal" from a denial of farmland assessment "shall be governed by the procedures provided for appeals in [N.J.S.A.] 54:3-21." N.J.S.A. 54:4-23.13b (emphasis added). N.J.S.A. 54:3-21 however only provides the deadlines and the dollar thresholds for local property tax appeals, thus, does not shed any light as to this query. N.J.S.A. 54:4-47 however, does provide some insight. That statute grants broad authority to the County Board to investigate, and thereafter "revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not valued at its taxable value, assess property omitted from any assessment, as provided by law, at its taxable value, and in general do everything necessary for the taxation of all property in the county at its taxable value." N.J.S.A. 54:4-47. Here, the County Board dealt with the Subject's assessment as to the 6.17-acre portion only in the context of an appeal under N.J.S.A. 54:3-21. Such an appeal, and disposition thereof by the County Board, presupposes the existence of a genuine controversy in this regard. This is because county boards are quasi-judicial agencies. See Vicari v. Township of Bethlehem, 8 N.J. Tax 513, 518 (although not part of the judiciary, "in hearing tax appeals, county boards are administrative agencies that exercise quasi-judicial jurisdiction," therefore, can "prior to its loss of jurisdiction [] amend and revise judgments" sua sponte). Here there was no actual controversy since the 6.17-acre portion

7

of the Subject was already qualified for farmland assessment as evidenced by the Township's notices of assessment, and neither plaintiffs nor the Township appealed either of the notices of assessment.

Does the County Board's judgment using code 10 but affirming the original assessment of $304,100 mean that the County Board deemed the 7.17 acres (total area of the Subject) as having a true value of that amount? This would appear an incongruous result given that the original assessment was undisputedly only upon the one-acre portion of the Subject containing the plaintiffs' residence. It would mean that the "original assessment" column on the County Board's judgment ($304,100) is incorrect or that additional 6.17 acres has no additional value. It would also mean that plaintiffs should be refunded the taxes collected based on the separately assessed amount of $5,600. Evidently, this could not have been the intent of the County Board's judgment.

Additionally, under the facts of this case, to deem the County Board's judgment code 10 as repudiating the unchallenged notices of assessment, offends notions of equity. The Township never revised its tax list. The County Board did not either. How are plaintiffs to understand that the Township is challenging its own notice of assessment assessing the 6.17 acres as farmland? They received a farmland assessment disallowance in December 2015, which advised them of their right to appeal the denial to the County Board. This they timely did. They received a notice of assessment assessing 6.17 acres as farmland at $5,600. That notice also advised them of their right to appeal the valuation to the County Board. This they did not do since their petition only listed denial of farmland assessment as a reason. Apparently confused by the contradictory notices from the Township, one denying farmland assessment, and the subsequent one providing that assessment to the same property, they continued to pursue their petition before the County Board. The Township however, never appealed its notice of assessment before the County Board or this

8

court. It never clarified or argued to this court how the contradictory notices should be considered. For the Township to first deny farmland assessment, then assess the 6.17-acre portion as such, then argue before the County Board and this court that the never-effectuated denial should be upheld, goes against the principle that the government turn square corners and deal fairly with the public.

This is not a case where equities lie in favor of the Township. See, e.g., Cherry Hill Industrial Properties v. Township of Voorhees, 186 N.J. Super. 307, 316 (App. Div.), aff'd as modified, 91 N.J. 526 (1982) (municipality which granted farmland assessment for two years although no such application was ever made by the property owner, could "assess the difference between the improperly granted farmland classification and the property's full valuation" by an omitted assessment procedure. Otherwise the principle that "each taxpayer should bear his fair share" of taxes would be "circumvent[ed]").[3] Here, plaintiffs timely applied for farmland assessment for 6.17 acres of the Subject, were untimely notified by the Township that the application was disallowed, then timely notified by the Township that the same 6.17 acres of the Subject was assessed as qualified farmland. The Township's complete lack of any action to rectify this contradiction cannot inure to its benefit. For this same reason, the principle that an assessor's denial of farmland assessment is presumptively correct (see Brighton v. Borough of Rumson, 22 N.J. Tax 39, 52 (Tax 2005), aff'd, 23 N.J. Tax 60 (App. Div. 2006)) cannot hold sway here. In addition, the County Board also did not analyze the patent contradiction and revise or correct the assessment for the 6.17-acre portion either under N.J.S.A. 54:4-46 or as a part of its quasi-judicial

---

[3] The statute itself also provides a remedy if after grant of farmland assessment, a change in use of the property "occurs between August 1 and December 31 of the pretax year." N.J.S.A. 54:4-23.13. If so, then "either the assessor or the county board of taxation shall deny or nullify [the farmland assessment] . . . application and, after examination and inquiry, shall determine the full and fair value of said land" and impose a regular assessment. Ibid. If farmland assessment is provided despite the change in use "in the ensuing year," the assessor can impose an added assessment, and collect the additional resultant taxes pursuant to the statute controlling added assessments. Ibid. The Township did not aver any change in use as to the 6.17-acre portion of the Subject.

9

authority.  See Vicari, supra, 8 N.J. Tax at 518; Township of Eastampton v. Maimon & Smith, 9 N.J. Tax 602, 611 (Tax 1988) (where county board was on notice that the municipality, by a reconsideration motion, did not agree with rollback taxes sought by the assessor, it should have corrected its original judgment in this regard).

In sum, the County Board's denial of farmland assessment was itself moot since the notice of assessment never revoked that farmland assessment qualification as to the 6.17 acres.  Further, neither plaintiffs nor the Township challenged the valuation aspect of the $304,100 assessment on the one-acre portion containing the homestead either before the County Board or to this court.  Therefore, the County Board's judgment affirming the original assessment was also rendered without any genuine or actual controversy in this regard, as it is here.  Thus, there is no relief for this court to provide, and no genuine controversy for this court to resolve.  The court need not render an opinion of whether or not plaintiffs' activities on the 6.17-acre portion (or income therefrom) would have qualified this area for farmland assessment.  That would amount to an advisory opinion, or more to the point, simply moot.

**CONCLUSION**

For the aforementioned reasons, plaintiffs' complaint is dismissed as moot since there is no justiciable controversy, as plaintiffs already have the relief sought: i.e., farmland assessment for the 6.17-acre portion of the Subject for tax year 2016.  Judgment reflecting this memorandum opinion will be entered accordingly.

Very truly yours

Mala Sundar, J.T.C.